**Ernest ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–86–0061–CR.**

Court of Appeals of Texas, Amarillo.

Aug. 14, 1991.

Joe W. Jernigan, Amarillo, for appellant.

Randall Sherrod, Dist. Atty., Canyon, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

## ON REMAND

REYNOLDS, Chief Justice.

A jury found appellant Ernest Rogers guilty of the offense of theft from the person of complainant William King and, further finding the enhancement allegations in the indictment true, assessed his punishment at confinement for 40 years. The State's evidence satisfied the jury that appellant, acting with co-defendant Norman Lee Watson, took cash and a credit card from the complainant. The taking occurred when the complainant, having secured cash from an automatic teller machine, declined appellant's offer of cash to take them to an address and voluntarily drove them to the place, where appellant took cash and a credit card from the complainant's billfold when he refused to gamble.

On original submission of appellant's appeal, we sustained the first of his six points of error, by which he contended that the admission of an extraneous offense was reversible error, reversed the judgment of conviction, and remanded the cause to the trial court. We did so, as we explained in an unpublished opinion, primarily because as we then understood the teachings of *Boutwell v. State,* 719 S.W.2d 164 (Tex.Cr. App.1985), the extraneous offense, committed five weeks after the offense for which appellant was convicted, did not meet the relevancy test for showing motive, scheme, and design, and to rebut the defensive denial of theft, the purposes for which the extraneous offense was offered. *Rogers v. State,* No. 07-86-0061-CR (Tex.App.— Amarillo, April 29, 1987, pet'n granted). We did not address the other points of error.

Granting the State's petition for discretionary review, the Court of Criminal Appeals articulated its decision in an unpublished opinion. Disclaiming any intent for *Boutwell* to be the ultimate word on extraneous offense evidence, the Court held:

> When Watson testified that the offense occurred in a manner contrary to the State's theory of the case, the State was entitled to show through the extraneous offense that the charged offense was more likely than not to have occurred as the complainant had testified. From the record before us, we cannot say that the trial court's determination that the evidence was relevant to prove the [S]tate's theory of the case and its prejudicial effect did not outweigh its relevancy. That is, the trial court did not abuse its discretion when it allowed the evidence before the jury. See *Jones v. State,* 376 S.W.2d 842, 843–844 (Tex.Cr. App.1964). See also *Plante v. State,* 692 S.W.2d 487, 492 (Tex.Cr.App.1985).

*Rogers v. State,* No. 625–87, slip op. at 4–6 (Tex.Cr.App. June 19, 1991). Thereupon, the Court reversed our judgment and remanded the cause for our consideration of appellant's other points of error. *Id.* at 6.

The decision of the Court of Criminal Appeals overruled appellant's first point of error. We will now overrule his remaining five points of error and affirm the judgment of the trial court.

With his second point, appellant charges the trial court with error in denying his motion for new trial based upon jury misconduct. The court erred, appellant submits in reliance upon *Sneed v. State,* 670 S.W.2d 262 (Tex.Cr.App.1984), since juror Cynthia Ball testified she changed her vote from 35 years to 40 years, the punishment assessed, mainly because the foreman said if they did not arrive at a verdict, there would be a hung jury and a whole new trial, and secondarily because of a discussion about the parole law.

However, juror Ball also testified that the parole law was mentioned as a hypothetical example and not as a fact, that no one purported to be an expert on the parole

law, that when it was brought up someone usually admonished the jury about not discussing parole, and that she did not adjust her verdict to fit any type of parole law. She did not recall any other juror mentioning that the discussion of the parole law affected their vote, and she candidly conceded that she could not say whether the discussion or her own preconceived notion was the second reason she used to rationalize her decision to change her vote.

The other witness called by appellant, juror Edna Haynes Blasingame, originally voted for 25 years and after discussions changed her vote to 40 years. She testified that the discussion of the parole law was general, no one asserted they had specialized knowledge in the area, and the discussion did not cause her to change her vote.

■■■ Whether a jury's discussion of the parole law constitutes reversible error is determined by the application of the five-prong test announced in *Sneed* as (1) a misstatement of the law (2) asserted as a fact (3) by one professing to know the law, (4) which is relied upon by other jurors, (5) who for that reason changed their vote to a harsher punishment. 670 S.W.2d at 266. It is at once apparent that the general discussion of the parole law without any juror professing to know the law or expressing an opinion about parole, coupled with the admonishments that it was not to be considered and the lack of definitive proof that any juror voted for a harsher punishment because of the discussion, did not meet the *Sneed* test for reversible error. *Keady v. State*, 687 S.W.2d 757, 759–60 (Tex.Cr.App.1985).

With respect to the primary reason juror Ball gave for changing her vote, she said that before she became a juror, she knew if the jury did not reach a decision, there could be a hung jury, but she did not know what happened after that, "except for maybe a new trial." She testified the foreman's statement that if they did not arrive at a verdict, there would be a hung jury, and there would have to be a whole new trial, affected her decision to change her vote to 40 years, because if there was another trial, appellant possibly would get more than forty years. She agreed that the major reason she changed her vote was to protect appellant by preventing his undergoing another trial and possibly getting a harsher punishment, albeit she admitted that was just a part of her own creative processes. Offered at least two opportunities to affirm that the foreman's remarks about a hung jury were stated as a fact, she would only say that she "assumed he knew what he was talking about," and she took it for a fact.

Juror Blasingame did not remember the foreman saying anything about having to arrive at a verdict or there would be a hung jury. Indeed, she did not recall anything being said about a hung jury.

Appellant contends that under the statute then existing—Article 40.03(7), (8), Texas Code of Criminal Procedure Annotated (Vernon 1979), since repealed and replaced by Rule 30, Texas Rules of Appellate Procedure—the foreman's statement of the result of a hung jury was the receipt of other evidence that denied him a fair and impartial trial. This results, he argues, because the foreman made a misstatement of the law, there being many dispositions of the accusation against him other than a whole new trial.

■■■ For a new trial to be mandated because the jury received other evidence during deliberations, a two-prong test must be satisfied: (1) "other evidence" was actually received by the jury, and (2) such evidence was detrimental to appellant. The controlling factor is the character of the evidence. *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Cr.App.1981).

■■■ At the outset, we observe that juror Ball's testimony of the foreman's statement was not refuted by the fact that juror Blasingame did not remember the foreman making the statement or recall anything being said about a hung jury. *Hunt v. State*, 603 S.W.2d 865, 868 (Tex.Cr.App. 1980). Then, accepting juror Ball's testimony of the statement as uncontroverted, the question is whether it was "other evidence."

So far as juror Ball's testimony reveals, the foreman's statement was made only one time, and there is no indication that it was heard by the other members of the jury or that its subject matter was discussed by them. She declined to say that the foreman made the statement as a fact; she only accepted it as a fact. Nevertheless, the remark was not an incorrect statement of the law generally, *Keady v. State*, 687 S.W.2d at 760 n. 2, and its utterance was not the receipt of "other evidence" by the jury. *Arrevalo v. State*, 489 S.W.2d 569, 571–72 (Tex.Cr.App.1973).

In brief, the record reveals that juror Ball was not incorrectly informed, although she may not have been fully informed of all possibilities in the event of a hung jury. Given her assumption, it was her prerogative as a juror to assess a punishment that in her mind would prevent appellant from receiving a harsher punishment in the event of a new trial. She may not now impeach that verdict. *Martinez v. State*, 533 S.W.2d 20, 23 (Tex.Cr.App.1976). It follows that the trial court did not err in overruling appellant's motion for new trial based on jury misconduct. The second point of error is overruled.

During the cross-examination of co-defendant Watson, the prosecutor asked, "Mr. Watson, how long have you been in jail with the defendant?" Before the witness answered, appellant objected to the question on the ground that it informed the jury he has been in jail awaiting trial. The objection was overruled. The prosecutor did not press the question; instead, he re-phrased his question and, as appellant notes, "still made his point" without objection.

Using his third point to contend the court erred in its ruling, appellant argues that the question infringed upon his right to the presumption of innocence the same as if he had been forced to stand trial before the jury in jail clothing. However, the mere asking of an improper question does not offer the vice inherent in requiring an accused to stand trial in jail clothing, which "is so likely to be a continuing influence throughout the trial" as to generally consti-

tute an unacceptable risk of affecting a juror's judgment. *Estelle v. Williams*, 425 U.S. 501, 504–05, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, *reh'g denied*, 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976).

■ The mere asking of an improper question will rarely cause the reversal of a judgment of conviction unless the question is obviously harmful to the defendant. *Guzmon v. State*, 697 S.W.2d 404, 408 (Tex.Cr.App.1985), *cert. denied*, 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986). In this regard, Watson had not answered the question when the objection was made and, because the matter was not pursued, there was no showing that the question itself informed the jury that appellant was in jail awaiting trial, particularly since Watson testified without objection that he and appellant had been previously arrested for a similar offense. Under these circumstances, the asking of the unanswered question was not obviously harmful to appellant, and the court did not reversibly err in its ruling. *Thomas v. State*, 701 S.W.2d 653, 662 (Tex.Cr.App.1985); *Bryant v. State*, 570 S.W.2d 921, 925 (Tex.Cr.App. 1978). The third point of error is overruled.

During complainant King's cross-examination, appellant, though being informed that the complainant was opposed to gambling as a part of his religious belief based on his 50–year membership in the church, framed questions and elicited answers to emphasize that the complainant had voluntarily given a ride to total strangers after he had just withdrawn money at a banking center. When the complainant injected, "And this is not unusual—," appellant objected that he was volunteering information and, without seeking a ruling, passed the witness.

On redirect examination, the complainant testified that he had done volunteer work within the past year and that he was in charge of the benevolent work for the church. He was permitted to testify, over appellant's objection of bolstering the witness, that he would get calls from United Way and places like truck stops to come

help out a stranded motorist who was without funds.

Appellant submits, with his fourth point, that the court erred in allowing the State to bolster its witness who had not been impeached. He asserts that since the complainant was previously shown to usually give rides to strangers, the purpose of the testimony was to show the jury that the complainant was a Good Samaritan, thereby being an attempt by the prosecutor to bolster the witness. The State replies that because the complainant was impeached by appellant's questions, bolstering was invited. We do not subscribe to either position.

Impeachment occurs when proof is adduced to show that the witness is unworthy of belief or credit. *Brown v. State*, 475 S.W.2d 938, 952 (Tex.Cr.App.1971). Bolstering occurs when a party uses an item of evidence to add credence or weight to some earlier unimpeached piece of evidence the party offered. *Pless v. State*, 576 S.W.2d 83, 84 (Tex.Cr.App.1978). Neither occurrence is presented by the examinations.

■ By his cross-examination, appellant was not challenging the credibility of the complainant's testimony that he voluntarily gave a ride to him and his co-defendant; instead, he sought to imply that the complainant had an ulterior motive for doing so, and foreclosed the complainant's explanation. It is a long standing rule that questions may be asked on redirect examination to produce explanation of answers on cross-examination from which wrong inferences might be drawn by the jury. *Heatherington v. State*, 115 Tex.Cr.R. 73, 29 S.W.2d 352, 353 (1930). Thus, the State was entitled to offer the complainant's objected-to testimony on redirect examination to explain why his action was not unusual. *Tischmacher v. State*, 153 Tex.Cr.R. 481, 221 S.W.2d 258, 261 (1949). Appellant's fourth point of error is overruled.

In the course of his argument at the guilt-innocence phase of the trial, the prosecutor told the jury that the complainant has "been going to church for 50 years." Appellant objected, stating, "I don't think there's any testimony that he was going to

church for 50 years. That's outside the record." The objection was overruled.

Appellant's fifth-point contention is that the trial court erred in allowing the prosecutor to comment on matters not in evidence. He enlarges the contention to submit that the comment was obviously intended to bolster the credibility of the State's only eyewitness to the offense, an objection he did not voice to the court. Nevertheless, the point is not well-founded.

■ The general areas of permissible jury argument include the drawing of reasonable deductions from the evidence. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Cr.App.1990). Counsel is given wide latitude in offering reasonable, legitimate, and good-faith inferences from the evidence so long as the argument is not manifestly improper or injects new and harmful facts into evidence. *Denison v. State*, 651 S.W.2d 754, 761–62 (Tex.Cr.App.1983). Then, from the evidence that the complainant had been a member of the church for 50 years, was in charge of the benevolent work for the church, and had done volunteer work within the past year, the remark that he has been going to church for 50 years cannot be reasonably said to be a comment on matters not in evidence. The fifth point of error is overruled.

■ With his final point, appellant complains, without citation of any authority, that the trial court committed numerous errors during the trial which, though each alone may not present reversible error, combined to deny him a fair trial. Apart from the reality that four of appellant's six enumerated, alleged errors are the subject of his overruled points of error, the point, being multifarious and without the citation of authority, violates the briefing rules and fails to preserve error. Tex.R.App.P. 74(d), (f); *Euziere v. State*, 648 S.W.2d 700, 703 (Tex.Cr.App.1983). The sixth point of error is overruled.

The judgment is affirmed.