

## NUMBER 13-09-00039-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**ANDY EUGENE GOMEZ,**                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                      **Appellee.**

### On appeal from the 105th District Court
### of Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Vela
### Memorandum Opinion by Justice Benavides

A jury convicted appellant, Andy Eugene Gomez, of one count of aggravated

sexual assault of a child and sentenced him to five years' imprisonment. *See* TEX. PEN.

CODE ANN. § 22.021 (West 2003). In two issues,[1] Gomez contends that: (1) the trial

---

[1] Gomez initially presented three issues on appeal, but abandoned his second issue regarding jury misconduct in his reply brief filed June 17, 2011.

court erred in denying his motion for directed verdict because the State offered insufficient evidence of venue; and (2) he was harmed by the trial court's erroneous admission of opinion testimony regarding the truthfulness of the complainant's testimony.   We affirm.

## I. BACKGROUND

On September 16, 2008, a Kleberg County grand jury indicted Gomez on three counts of first-degree felony aggravated sexual assault of a child.   *See id.*   The charges stem from three separate alleged acts of sexual assault on N.M. while Gomez was married to and lived with N.M.'s mother and her children.   N.M. is not Gomez's biological daughter.   The first count of the indictment was sexual assault by penetration of N.M.'s sexual organ by Gomez's sexual organ; the second count was sexual assault by penetration of N.M.'s sexual organ by Gomez's finger; and the third count was sexual assault by penetration of N.M.'s mouth by Gomez's sexual organ.   Gomez pled not guilty to all three counts.

At trial, the jury heard testimony from various witnesses, including (1) N.M., (2) N.M.'s brother, I.M., (3) N.M.'s mother, S.G., and (4) N.M.'s one-time foster mother, J.B. After the State's case-in-chief, Gomez moved for a directed verdict on two grounds: (1) that there was no evidence presented of the date of the crime; and (2) the State failed to prove venue.   The trial court denied the motion.   At the close of the case, the jury acquitted Gomez of the first two counts of the indictment but convicted him of the third. Gomez filed a motion for new trial, which was also denied.   Gomez appeals on two issues.

## II. Discussion

### A. Venue

In his first issue, Gomez argues that the trial court erred in denying his motion for directed verdict because the State failed to offer any evidence that the offense occurred in Kleberg County as set out in the indictment.

A challenge to a ruling on a motion for directed verdict is a challenge to the sufficiency of the evidence to support the conviction. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) (en banc). We must consider all the evidence "in the light most favorable to the verdict." *Id.* "If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling appellant's motion." *Id.*; *see Lemoine v. State*, 85 S.W.3d 385 (Tex. App.—Corpus Christi 2002, pet ref'd).

"Venue is not an element of the offense." *Witt v. State*, 237 S.W.3d 394, 399 (Tex. App.—Waco 2007) (citing *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981); *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd)). Unless it is disputed, an appellate court must presume that venue was proved in the trial court. *See* Tex. R. App. P. 44.2(c)(1). However, the State must prove by a preponderance of direct or circumstantial evidence that the county where prosecution takes place is proper. *See* Tex. Code Crim. Proc. Ann. art. 13.17 (West 2005); *see also Black v. State*, 645 S.W.2d 789, 789 (Tex. Crim. App. 1983) (noting the standard for proving venue in criminal cases). More specifically, prosecution of a sexual assault may be tried in the venue where the act is committed. *See* Tex. Code Crim. Proc. Ann. art 13.15 (West 2005).

3

In the present case, the State offered testimony of the complainant's biological mother S.G., complainant's brother I.M., and N.M to establish where they resided with Gomez when the alleged sexual assaults took place and what specific acts took place.

The following colloquy took place with S.G. about where the family resided with Gomez:

| STATE: | Where—As far as these living arrangements were, where was this in particular? |
|---|---|
| S.G.: | We resided here in Kingsville on 217 East Nettie. |
| STATE: | And that's here in Kleberg County? |
| S.G.: | Yes, ma'am. |
| STATE: | I'm sorry, Kleberg County, Texas? |
| S.G.: | Yes, ma'am. |

Furthermore, I.M. testified that before he was in foster care, he lived at home with his mother, step-father (Gomez), and siblings, including N.M. I.M. told the jury that one night he awoke at that residence to get a drink of water and witnessed Gomez put "his middle part . . . in [N.M.'s] mouth." N.M. also testified that prior to foster care, she lived with her mother S.G., step-father (Gomez), and siblings, when Gomez committed the alleged wrongful conduct.

We hold that the State met its evidentiary burden to prove that Kleberg County was the proper venue to prosecute this matter based on the testimony that established a connection between the location of the residence where the foregoing alleged acts took place and Kleberg County. *See Black*, 645 S.W.2d at 791. Accordingly, we overrule Gomez's first issue.

**B. Admission of Testimony to Complainant's Truthfulness**

4

In his second issue, Gomez argues that the trial court erroneously admitted opinion testimony by N.M's one-time foster mother and State's witness, J.B., about N.M.'s truthfulness to the specific allegations. Further, Gomez contends this erroneous admission caused him harm.

As a general rule, a lay witness's testimony about another witness's truthful character is admissible, but only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence. *See* TEX. R. EVID. 608. Direct testimony by one witness as to another witness's truthfulness in making specific allegations is inadmissible. *See Schutz v. State* (*Schutz I*), 957 S.W.2d 52, 67 (Tex. Crim. App. 1997) (en banc) (incorporating a South Dakota Supreme Court holding that "one witness may not testify as to another witness's credibility or truth-telling capacity because such testimony would invade the exclusive province of the jury to determine the credibility of a witness").

Here, the trial court denied Gomez's objection and request to strike the following re-direct examination of J.B. by the State regarding N.M.'s specific allegations of abuse:

| | |
|---|---|
| STATE: | Now—and on that basis of whether she was telling the truth or not, when she spoke to you, in your opinion, was she telling the truth? |
| | . . . . |
| J.B.: | Yes. |
| | . . . . |
| STATE: | [Gomez's attorney] asked you that at the time that [N.M.] outcried that either someone— someone or you did not believe her and that's why there was continuing investigation, was that your testimony? |
| J.B.: | Well, I believed her when she told me that she was |

sexually abused.

The trial court denied Gomez's request to strike the quoted testimony from the record, despite Gomez's argument that J.B. was not allowed to give an opinion on the truthfulness of N.M.'s allegations. The State, however, argues that Gomez "opened the door" to the State's line of questioning because Gomez asked J.B. about the truthfulness of N.M.'s allegations first, and therefore, the State had a right on re-direct to clarify what J.B. said, under Rule 608. In support, the State points to the following testimony on cross examination:

DEFENSE: All right. Because in January, she had denied any sexual abuse, isn't that right?

J.B.: Yes.

DEFENSE: And either you or C.P.S. or somebody didn't think that she was telling you the whole truth?

J.B.: Correct, yes.

DEFENSE: So she was continually asked whether or not that was true or not?

J.B.: Not by me.

Based on the foregoing, we agree with the State. Gomez's cross-examination asked J.B. to testify with respect to N.M.'s truthfulness and invited the State to remedy any misconception it may have caused to the jury. *See Schutz I*, 957 S.W.2d at 74. Accordingly, we hold that the trial court did not err by allowing it into evidence. *Id.*; *see* TEX. R. EVID. 608; *Rogers v. State*, 815 S.W.2d 811, 816 (Tex. App.—Amarillo 1991, no pet.) (holding that "[i]t is a long standing rule that questions may be asked on redirect examination to produce explanation of answers on cross-examination from which wrong inferences might be drawn by the jury").

6

Even if the trial court erred in allowing J.B.'s testimony, the error was harmless and did not affect Gomez's substantial rights. We review non-constitutional errors, after examining the record as a whole, to determine whether the error had a "substantial or injurious effect or influence on the jury's verdict" such that it requires reversal of the conviction. *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 44.2(b). When performing a rule 44.2(b) harm analysis, we must consider everything in the record, including "testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence" as well as instructions to the jury, theories of the case, and relevant voir dire. *Schutz v. State* (*Schutz II*), 63 S.W.3d 442, 444–45 (Tex. Crim. App. 2001).

We first note that the jury acquitted Gomez on the first two counts of the indictment. These acquittals lend themselves to the logical conclusion that the jury believed some—but not all—of the complainant's testimony. In light of the significance of the two acquittals, the record does not support a finding that the jury allowed J.B.'s testimony about N.M.'s truthfulness to the specific allegations to supplant its own decisions. *See id.* at 445.

Furthermore, we reviewed the testimony of all of the witnesses and evidence—including the medical report of N.M. prepared by a sexual assault nurse examiner and two video interviews of N.M. by a social worker. We also reviewed the voir dire proceedings, in which Gomez's counsel asked two pertinent questions of the panel. The first dealt with whether the prospective jurors agreed to hold their judgment and decision until hearing all of the evidence, to which the panel agreed; and the second dealt with whether they would believe a child on whatever s/he says, to which the entire

panel disagreed. In light of our review, even if the foster mother's testimony on N.M.'s truthfulness was inadmissible, it was but a small portion of a large amount of evidence presented for consideration and assessment of N.M.'s credibility. *See Schutz II*, 63 S.W.3d at 446. Therefore, although we hold that the trial court did not err, if any error did exist, it was harmless and should be disregarded. *See* TEX. R. APP. P. 44.2(b). We overrule Gomez's second issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
8th day of December, 2011.